UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

October 5, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *William J. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-2962-BAH

Dear Counsel:

On November 15, 2022, Plaintiff William J. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case, ECF 8, and the parties' dispositive briefs, ECFs 11 and 13. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on June 23, 2020, alleging a disability onset of November 13, 2017. Tr. 70–84. Plaintiff's claim was denied initially and on reconsideration. Tr. 70–71, 92. On January 12, 2022, Plaintiff amended the alleged disability onset to November 21, 2018. Tr. 201. On February 17, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 34–69. Following the hearing, on April 25, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 15–28. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.  **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ

---

[1] 42 U.S.C. §§ 301 et seq.

*William J. v. Kijakazi*
Civil No. 22-2962-BAH
October 5, 2023
Page 2

evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since November 21, 2018, the amended alleged onset date." Tr. 18. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "left shoulder osteoarthritis, impingement syndrome of the left shoulder, impingement syndrome of the right shoulder, degenerative changes of the cervical spine, cervical radiculopathy, nerve root compression in the cervical spine, status post right elbow triceps tendon repair, right shoulder osteoarthritis, and diverticulitis." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "left mild cubital tunnel syndrome, mild bilateral carpal tunnel syndrome, gastroesophageal reflux disease, hyperlipidemia, benign essential hypertension, history of small bowel perforation and resection, obesity, insomnia, sleep apnea, a history of hernias, and hearing loss in the left ear," as well as "anxiety and adjustment disorder with mixed emotional features." Tr. 18–19. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 20. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to occasional push/pull and frequent hand controls with the bilateral upper extremities. The claimant is able to frequently climb ramps or stairs. The claimant is limited to no climbing of ladders, ropes, or scaffolds. The claimant is able to occasionally kneel or crawl. The claimant is able to frequently reach in any direction with the bilateral upper extremities. The claimant is limited to no more than frequent fingering with the left upper extremity. The claimant can have no more than occasional exposure to vibration, extreme cold, and hazards.

Tr. 22. After considering testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff was unable to perform past relevant work as a community service officer (DOT[2] #372.367-010), police officer (DOT #375.263-014), or the composite job of police supervisor (DOT #375.263-014 and DOT #375.137-034) but could perform other jobs that existed in

---

[2] The "DOT" is the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*William J. v. Kijakazi*
Civil No. 22-2962-BAH
October 5, 2023
Page 3

significant numbers in the national economy. Tr. 26. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 28.

### III.     LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)) ("A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("[Substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.     ANALYSIS

Plaintiff raises three arguments on appeal, specifically that the ALJ erroneously: (1) failed to evaluate and explain Plaintiff's RFC; (2) incorrectly evaluated Plaintiff's subjective complaints; and (3) improperly "relied upon the Plaintiff's daily activities" in determining the RFC. ECF 11, at 3–17. Specifically, Plaintiff avers that the ALJ failed to identify the evidence used for the RFC determination and to provide a narrative discussion to explain the RFC. *Id.* at 3–9. Regarding subjective complaints, Plaintiff argues that the ALJ improperly increased Plaintiff's burden of proof regarding the severity, persistence, and limiting effects of his symptoms in violation of *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020). *Id.* at 9–17. Finally, Plaintiff contends that the ALJ improperly evaluated Plaintiff's activities of daily living by failing to consider the extent to which Plaintiff was able to perform those activities. *Id.* at 13–17. Defendant counters that substantial evidence supports the ALJ's RFC and evaluation of Plaintiff's subjective complaints of pain and daily activities. ECF 13, at 5–15.

I begin with Plaintiff's argument that the RFC is not supported by substantial evidence. A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function

basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Pursuant to Social Security Ruling 96-8p, an ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. § 404.1545(b). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work" of which she believes the claimant to be capable of performing. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Monroe*, 826 F.3d at 179). As noted in *Dowling*, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Id.* (alteration in original) (citation omitted). "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two." *Thomas*, 916 F.3d at 311. At the same time, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [the] decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).

Plaintiff alleges that the ALJ "failed to identify the evidence upon which she relied to support" the conclusions that "Plaintiff was capable of occasional pushing and pulling with the upper extremities, frequently using hand controls, bilaterally, and frequently reaching in any direction bilaterally." ECF 11, at 6. Contrary to Plaintiff's assertion, the ALJ did cite the record for these conclusions by pointing to Dr. Jean Guy-Yoma Souffrant's medical opinion and examination of Plaintiff advising that Plaintiff "could return to work with no pushing, pulling, and/or lifting anything over twenty pounds" and finding "normal motor strength and tone in the upper extremities despite some decreased sensation in the left fourth and fifth digits." Tr. 25. The ALJ cited this medical opinion specific to the functions of pushing, pulling, using hand controls, and reaching, *id.*, and concluded, consistent with the finding of partial persuasiveness of that opinion, that Plaintiff was "limited to occasional push[ing]/pull[ing] and frequent hand controls with the bilateral upper extremities" in the RFC, Tr. 22. Therefore, the ALJ did not "fail[] to identify the evidence upon which she relied" for this conclusion, ECF 11, at 6, and the ALJ "buil[t] an accurate and logical bridge" to her conclusion. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Thus, this conclusion was based on substantial evidence.

Plaintiff also alleges that "it is not possible to identify how [Plaintiff's status post right elbow triceps tendon repair] impairment was factored into the [RFC] assessment, if at all, because there is no explanation." ECF 11, at 6. First, it must be noted that the ALJ incorporated limitations relating to Plaintiff's elbow impairment in the RFC. *See* Tr. 25–26 ("The claimant's severe physical impairments [including that of] his right elbow support an overall reduction to the light exertional level. . . . The claimant is further limited in postural activities and manipulative activities to address his shoulder pain, neck pain, *and elbow pain* from his severe impairments." (emphasis added)). Nevertheless, Plaintiff is correct that the ALJ failed to explain *how* these limitations adequately account for limitations due to Plaintiff's elbow impairment. *See Dowling* 986 F. 3d at 387 (requiring narrative explanation of RFC limitations). This failure alone does not

control the outcome, however, as it remains Plaintiff's burden to articulate why this failure warrants remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *see also Smith v. Colvin*, No. TMD-15-1694, 2016 WL 5147195, at *10 (D. Md. 20, 2016) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis). Plaintiff has not met this burden. Critically, Plaintiff fails to suggest how the RFC might have better accommodated Plaintiff's elbow impairment. Indeed, Plaintiff appears to suggest that the RFC did, in fact, include adequate limitations to address Plaintiff's manipulative limitations due to Plaintiff's elbow pain. *See* ECF 11, at 6 ("[T]he ALJ determined that Plaintiff's status post right elbow triceps tendon repair was a severe impairment, [Tr. 18], *which presumably led to some of the manipulative limitations identified in the residual function capacity assessment*." (emphasis added)). ECF 11, at 6. Considering that Plaintiff fails to point to evidence suggesting that any additional RFC limitation was appropriate, and recognizing that the Plaintiff essentially concedes that the elbow impairment was considered in crafting RFC limitations, I conclude that the ALJ's failure to explain how Plaintiff's right elbow impairment is accounted for by the RFC limitations was harmless.

Plaintiff also asserts that the ALJ did not discuss Plaintiff's right upper extremity ailments of "biceps tendinosis, common extensor tendinosis, common flexor tendinosis, chronic sprains or degeneration of the radial and lateral ulnar collateral ligaments, and chronic anterior band ulnar collateral ligament sprain." ECF 11, at 7. While the ALJ does not mention these ailments specifically, she repeatedly summarizes Plaintiff's assorted, related shoulder ailments as "shoulder pain." Tr. 22–24, 26. While an ALJ is required to consider all of a claimant's medical conditions, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." *Reid*, 769 F.3d at 865 (citation omitted). Here, it is clear that the ALJ's references to right "shoulder pain" are intended to refer to the assorted ailments that cause pain in Plaintiff's shoulder. The ALJ describes how Plaintiff's pain in his right shoulder improved with treatment, Tr. 23–24, and how Plaintiff's daily activities contradict his reported pain levels in Plaintiff's shoulders, Tr. 24. Ultimately, the ALJ explains that the limitations in "postural activities and manipulative activities" are intended to "address his shoulder pain, neck pain, and elbow pain." Tr. 26. Therefore, the ALJ adequately explained her consideration of Plaintiff's assorted right shoulder ailments and how they are accommodated in the RFC.

Plaintiff further charges that the ALJ "failed to explain how the Plaintiff's persistent left neck [sic], shoulder, and arm pain with C3–4 nerve root compression were addressed" in the RFC and "failed to explain how an individual with [such impairments] would be capable of frequent reaching in any direction, frequent fingering, and unlimited handling with the left upper extremity." ECF 11, at 8. To the contrary, the ALJ explained that she found that "the records do not support the severity [Plaintiff] alleges." Tr. 23. After recounting Plaintiff's success with medical treatment and examinations showing "5/5 motor strength in the bilateral upper extremities" and "normal" coordination, the ALJ concluded that the medical evidence indicated that Plaintiff's functional capacity was greater than Plaintiff's reports of pain suggested. Tr. 23–24. This is a sufficient evidentiary base for the ALJ's inclusion of this limitation in the RFC.

*William J. v. Kijakazi*
Civil No. 22-2962-BAH
October 5, 2023
Page 6

The Court next considers Plaintiff's contention that the ALJ applied an improper standard in evaluating Plaintiff's subjective complaints by "improperly increasing his burden of proof." ECF 11, at 12. An ALJ properly analyzes a claimant's subjective complaints by using a two-part process. *See Craig*, 76 F.3d at 594–95. First, the ALJ must assess the objective medical evidence and determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant meets this threshold requirement, then the ALJ determines how the extent and severity of those symptoms affect the claimant's ability to work. *See id.* at § 404.1529(c).

The Fourth Circuit has "consistently held that 'while there must be objective medical evidence of some condition that could reasonably produce the pain,'" this statement applies solely to the first step of the process. *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)). As to the second step, "'there need not be objective evidence of the pain itself or its intensity.'" *Id.* (quoting *Walker*, 889 F.2d at 49). In *Arakas*, the Fourth Circuit held that, "at the second step, the ALJ improperly discredited [the claimant's] statements about the severity, persistence, and limiting effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'" *Id.* at 96 (internal citations omitted). A claimant is "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their symptoms. *Id.* (quoting *Hines v. Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006)). Accordingly, an ALJ engaging in the second step of the subjective complaint analysis may not "'improperly increase [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)). At the same time, however, "a claimant's allegations about her pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Craig*, 76 F.3d at 595.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," satisfying the first part of the framework for evaluating subjective complaints. Tr. 22. At the second step, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22–23. Plaintiff argues generally that the ALJ's conclusion in the second part of the process runs afoul of *Arakas*. ECF 11, at 12. Plaintiff rests his argument on the assertion that considering objective evidence to evaluate subjective complaints is impermissible because it "erroneously require[s] the Plaintiff to prove the type and degree of his subjective complaints by objective medical evidence." *Id.* This is incorrect. *Arakas* and *Hines* do not stand for the proposition that, at the second step of evaluating subjective complaints, an ALJ may *only* consider subjective evidence. *See Arakas*, 983 F.3d at 95; *Hines*, 453 F.3d at 565, n.3 ("While objective evidence is not mandatory at the second step of the test, 'this is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are.'" (quoting *Craig*, 76 F.3d at 595)). Instead, they stand for the rule that, "where objective medical evidence exists, the ALJ

may consider it so long as objective evidence is not 'effectively required.'" *John O. v. Kijakazi*, No. AAQ-21-01378, 2022 WL 2305255, at *5 (D. Md. June 27, 2022) (quoting *Arakas*, 983 F.3d at 95). Thus, while a claimant cannot be required to prove the extent and severity of their subjective complaints with objective evidence, such evidence – if it exists–may still be considered by the ALJ to evaluate those complaints. *See id.*

Here, the ALJ adhered to *Arakas* by considering Plaintiff's subjective complaints *and* other available evidence to determine the severity of Plaintiff's symptoms and limitations, ultimately concluding that Plaintiff's complaints were not consistent with that evidence. Tr. 23–25. In so doing, the ALJ relied on the evidence before her and did not "effectively requir[e] [Plaintiff's] subjective descriptions of [his] symptoms to be supported by objective medical evidence." *Arakas*, 983 F.3d at 96. The record reflects that Plaintiff's complaints did not correspond to the severity of his impairments. *See* Tr. 23–25. Plaintiff himself recognizes, albeit slightly inaccurately, that the record is replete with evidence that calls into question Plaintiff's complaints as to the intensity, persistence, and limiting effects of his impairments. *See* ECF 11, at 12 ("The Administrative Law Judge then spent three pages explaining how the Plaintiff's complaints failed to be supported by the objective medical evidence." (citation omitted)). Plaintiff fails to point to any specific instances where he alleges the ALJ crossed over into "effectively requiring . . . objective medical evidence." *Arakas*, 983 F.3d at 96. Thus, the ALJ properly evaluated Plaintiff's subjective complaints.

Plaintiff's final argument alleges that the ALJ did not properly consider the extent of Plaintiff's ability to perform his daily activities. EF 11, at 13–17. I disagree. The ALJ must consider all of the evidence in the record in making an RFC determination, including activities of daily living. *Mascio*, 780 F.3d at 636 ("[T]he [RFC] 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" (citation omitted)). When considering activities of daily living, "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods*, 888 F.3d at 694 (emphasis in original). Contrary to Plaintiff's assertion, the ALJ here did consider the extent of Plaintiff's ability to perform daily activities.

In support of this final argument, Plaintiff contends that the ALJ omitted significant context surrounding Plaintiff's activities of taking regular walks, lifting weights, and performing household chores. ECF 11, at 13 (citing Tr. 24). For example, Plaintiff notes that the ALJ's reference to an October 2019 report to support the claim that Plaintiff was walking almost every day and doing mild weightlifting ignores the fact that "15 days later [Plaintiff] was advised that due to the nerve root compression in his cervical spine, he required an anterior cervical discectomy and fusion." *Id.* Plaintiff presumably argues that daily walking and mild weightlifting are unrepresentative of his abilities because these activities became impossible soon after the creation of the October 2019 report. However, Plaintiff presents no evidence that this change in activities actually happened. In fact, the ALJ also cited to a July 2020 report that indicated that Plaintiff "was walking four miles daily, and he had a full gym in his house." Tr. 24. As such, it was reasonable for the ALJ to conclude that Plaintiff's walking and exercise were unaffected by the

*William J. v. Kijakazi*
Civil No. 22-2962-BAH
October 5, 2023
Page 8

October 2019 news that he required surgery. Plaintiff then implies without explicitly arguing that, because he was "advised to continue his physician directed home exercises" in June and July of 2020, Plaintiff's exercise should have been somehow exempted from consideration by the ALJ as evidence of his RFC. ECF 11, at 13. Contrary to Plaintiff's assertion, the fact that exercise was advised by a physician does not detract from the functionality inferences that can be drawn from that exercise. *See Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008) (holding that ALJ did not err in contrasting claimant's reports of pain with the fact that patient was completing doctor-recommended exercise). Therefore, the ALJ did not err in her consideration of Plaintiff's exercise activities, and the ALJ properly considered Plaintiff's daily activities and the extent of Plaintiff's ability to perform them.

Because the ALJ's decision applied the proper legal standards and was supported by substantial evidence, the decision must be affirmed.

## V.   **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge